UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

GENERAL INSURANCE COMPANY OF  )
AMERICA, a Washington corporation,  )
                                      )  3:10-CV-00588-LRH-VPC
      Plaintiff/Counter-Defendant,  )
                                      )
v.  )  ORDER
                                      )
SCOTT CRONK, an individual, CHRIS  )
CRUMLEY, an individual,  )
      Defendants/Counter-Claimants.  )
_____ )
EMPLOYERS INSURANCE COMPANY OF  )
NEVADA,  )
      Plaintiff in Intervention,  )
v.  )
GENERAL INSURANCE COMPANY OF  )
AMERICA, et al.,  )
      Defendants in Intervention.  )
_____ )

      Before the court are Plaintiff General Insurance Company of America's ("General Insurance") Motion for Partial Summary Judgment (#29[1]), and Defendants Scott Cronk and Chris Crumley's Opposition and Counter Motion for Summary Judgment (#54). Plaintiff-in-Intervention

---

[1] Refers to the court's docket entry number.

Employers Insurance Company of Nevada ("Employers Insurance") also filed an opposition (#55) to General Insurance's motion, General Insurance filed a consolidated reply and cross-opposition (#56), and Cronk and Crumley filed a cross-reply (#57).

**I.     Facts and Procedural History**

This action involves uninsured motorist (UIM) coverage under an employer's commercial auto insurance policy. Scott Cronk and Chris Crumley were employed as security officers by the Carson Nugget Casino in Las Vegas. On September 15, 2009, they were on foot in the parking lot and attempting to prevent an intoxicated customer from driving away in his pickup truck when they were struck by the vehicle and seriously injured. No casino vehicles were involved in the incident.

Cronk and Crumley made a claim for UIM benefits under the Carson Nugget's policy with General Insurance, as their medical bills exceeded the policy limits on the customer's auto insurance policy and their own personal auto policies. General Insurance denied the claim on the basis that Cronk and Crumley were not "insureds" under the casino's UIM endorsement, which defines "insureds" as including, in pertinent part, "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'"[2] Cronk and Crumley were listed by the Carson Nugget

---

[2] Section B, entitled "Who Is An Insured," states:
If the Named Insured is designated in the Declarations as:
1.  An individual, then the following are "insureds":
    a.  The Named Insured and any "family members".
    b.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    c.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
2.  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
    a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    b.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(Doc. #37, pp. 67.)

2

as authorized drivers of its insured vehicles. Nonetheless, General Insurance denied their claim on the basis that neither was occupying a covered vehicle at the time of the accident.

On September 23, 2010, General Insurance filed this action for declaratory relief, seeking a declaration that Cronk and Crumley are not entitled to UIM benefits under the policy. On October 11, 2010, Cronk and Crumley filed counterclaims for (1) breach of contract, (2) bad faith, and (3) breach of the Nevada Unfair Claims Settlement Practices Act. Only their breach of contract claim remains, however, as they stipulated to dismissal of their second and third claims, as well as their prayer for punitive damages.

On March 2, 2011, with the court's leave, Employers Insurance filed a complaint in intervention against General Insurance. As the casino's insurer for workers compensation liability, Employers Insurance has paid substantial sums in medical expenses and compensation as a result of the incident. It seeks a declaration of Cronk and Crumley's rights under the General Insurance UIM policy and also claims the right under NRS § 616C.215 to be subrogated to those rights.

General Insurance and Cronk and Crumley now cross-move for summary judgment.

**II.    Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the

moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

**III.   Discussion**

General Insurance principally contends that under the terms of the UIM policy, as written, Cronk and Crumley do not qualify as "insureds" because they were not "occupying" a covered auto during the incident in question. In fact, they were on foot and not occupying any vehicle at all, and the truck that struck them was owned, operated and insured by a third party. Cronk and Crumley respond that they were "insureds" under the policy as authorized drivers of the casino's vehicles, and the "occupying" limitation is therefore void as contrary to Nevada public policy, citing NRS § 690B.020(1) and *State Farm Mut. Auto. Ins. Co. v. Hinkel*, 488 P.2d 1151 (Nev. 1971).

Section 690B.020(1) generally mandates that automobile liability policies in Nevada include UIM coverage "for the protection of persons insured thereunder," unless such coverage is rejected in writing by a named insured. Construing the statute's predecessor in *Hinkel*, the Nevada Supreme Court held that policy provisions excluding or limiting UIM coverage to an insured "by specifying his location or the particular vehicle occupied at the time of injury" are void as against

4

Nevada's statutory expression of public policy. 488 P.2d at 1153. There, the claimant, who qualified as an "insured" under the policy's terms as both a relative (the minor son) of the named insured and a resident in his household, was injured in an accident with an uninsured motorist while riding his own motorcycle that was not insured under his father's policy. In voiding the exclusion, the court reasoned that because the claimant was a "person insured" under the statute and the named insured had not rejected UIM coverage, he was "entitled to uninsured motorist protection without limitation." 488 P.2d at 1153; *see also id.* at 484 ("Here, Gordon Hinkel was a 'person insured' and any limitation upon his coverage was void.").

General Insurance contends that this case is governed instead by the Nevada Supreme Court's later decision in *Beeny v. California State Auto. Ass'n Inter-Ins. Bureau*, 752 P.2d 756 (Nev. 1988). There, a car owner and her passenger were injured in an accident with an underinsured motorist, and the passenger sought UIM benefits under the owner's auto policy that provided coverage for injuries occurring in any of the owner's four vehicles. The policy defined an "Insured person" as the owner, her relatives, and "any other person occupying your auto." It was undisputed that the owner, as the named insured, could stack the UIM coverages on her four vehicles, but the passenger was denied multiple coverage. In determining the extent of the passenger's entitlement to UIM benefits, the court construed the policy as creating two distinct classes of insureds: so-called "class one insureds," whose coverage is "personal in nature and not tied to use of any [particular] vehicles," and "class two insureds," who, "'[t]o be insured, . . . must actually be occupants of an insured vehicle.'" *Id.* at 758 (quoting *Sturdy v. Allied Mut. Ins. Co.*, 457 P.2d 34, 40 (Kan. 1969)). Applying this distinction, the court noted that the named insured could stack UIM coverage under her "four" policies because, as a named insured, she was insured personally and "was protected against uninsured motorists regardless of whether she was in her car, in her house, or on the street." *Id.* By contrast, the court held that the guest passenger could not stack UIM coverages, not because of any prohibition against stacking, but because he did not

5

1 qualify as "insured" as to any vehicle except the one he was occupying during the accident. The
2 court reasoned:

> [B]y the very terms of [the] policy, [the passenger's] UM coverage was tied to the vehicle he was in. It arose only because he was in a car [the owner] insured. Therefore, his entitlement to UM benefits, unlike [the owner's], arose under the terms of the one specific policy covering the car he occupied. Under the terms of the other 'three' policies, he was not an insured. Because his coverage arose under only one policy, he is entitled to the UM benefits of only that policy, and not the policies covering the other vehicles.

7 *Id.*

8   Applying the reasoning of *Hinkel* and *Beeny* to the facts and policy terms at issue in this
9 case, the court finds that *Hinkel* is distinguishable and that *Beeny* controls. Like the vehicle owner
10 in *Beeny*, the *Hinkel* claimant's inclusion as an "insured" was personal in nature and not
11 conditioned upon use of a covered vehicle, and the exclusion that the court voided was a carve-out
12 from that otherwise all-encompassing personal coverage. As the court emphasized, the claimant
13 "was afforded uninsured motorist coverage in every conceivable place on the face of this earth
14 except upon his own motorcycle." 488 P.2d at 482. The same cannot be said of Cronk and
15 Crumley, whose coverage is like the guest passenger in *Beeny*. Notwithstanding their designation
16 as authorized drivers of company vehicles, Cronk and Crumley were insured under the Carson
17 Nugget's commercial auto policy neither personally nor even generally as employees or authorized
18 drivers. Rather, the policy defines "insureds" strictly according to activity—specifically, "[a]nyone
19 'occupying'" a company vehicle. Thus, as in *Beeny*, under the plain terms of the policy, Cronk and
20 Crumley's qualification as "insureds" and their entitlement to UIM coverage were subject to a
21 condition precedent and limited to their occupancy of a company vehicle. Because it is undisputed
22 that they were not "occupying" a company vehicle during the incident in question, they were not
23 "insureds" under the policy. Consequently, they were not "persons insured" within the meaning of
24 § 690B.020(1), making its statutory guarantee of UIM coverage inapplicable.

6

This conclusion, that insurers do not run afoul of § 690B.020(1) by defining "insureds" based on vehicle occupancy, is not in conflict with *Hinkel*'s holding that UIM coverage cannot be denied to named insureds based on vehicle occupancy. In *Hinkel*, the court expressly focused on the statutory term "person insured" both in defining the applicable public policy, 488 P.2d at 1153 ("It is the clear intent of the legislature that [the statute] requires protection against the peril of injury caused by an uninsured motorist to a 'person insured.'"), and in determining the statute's very applicability to the facts at hand, *id.* at 1154 ("Here, Gordon Hinkel was a 'person insured' and any limitation upon his coverage was void."). Moreover, the court expressly gave insurance carriers an out, noting that despite its holding as to "persons insured," insurers could limit UIM coverage by altering the definition of who qualifies as a "person insured" in the first place. *Id.* ("The [insurer] was not entirely without a remedy for, within its power and pursuant to the statutory authority, it could predetermine who was to be a named insured. However, once a person was included as a 'person insured,' the insurer could not exclude him from coverage."). That is precisely the effect of the policy the Nevada Supreme Court applied in *Beeny* and of the UIM policy at issue in this case.

To hold otherwise in this case would produce anomalous results. Voiding the Carson Nugget's occupancy-based definition of "insureds" would result in its UIM policy covering literally "[a]nyone," at any time, in any place. Even limiting coverage to anyone who has occupied or is authorized to occupy a Carson Nugget vehicle would be anomalous. As General Insurance posits, the result urged by Cronk and Crumley would effectively grant them personal coverage under their employer's commercial auto policy, entitling them to coverage even if they were walking down the street on their day off. This would be contrary to the reasonable expectations of the parties and the unambiguous language of the policy, which is plainly intended to provide coverage only within the sphere of company vehicles and does not identify casino employees, customers or anyone else as named insureds entitled to personal coverage. In *Hinkel*, the Nevada Supreme Court applied the "unambiguous language" of § 690B.020(1) to avoid an anomalous result—that a named insured

would be "afforded uninsured motorist coverage in every conceivable place on the face of this earth except upon his own motorcycle." 488 P.2d at 482. On the other side of the same coin, this court declines to apply the statute in a manner that would create an anomaly by denying Nevada businesses the ability to restrict their commercial auto coverage to persons using company vehicles. "Nowhere in the unambiguous language of our statute do we find any authorization for that result." *Id.*

Cronk, Crumley and Intervenor Employers Insurance further contend that the occupancy limitation on "insureds" is void because it violates NRS § 616C.215(3)(c). As the Carson Nugget's workers compensation carrier, Employers Insurance has the right under paragraph (b) of the statute to be "subrogated to the rights of the injured employee . . . to recover proceeds under the employer's policy of uninsured or underinsured vehicle coverage." Paragraph (c) then limits the ability of insurers to avoid such liability by declaring as "void" "[a]ny provision in the employer's [UM or UIM policy] which has the effect of . . . (2) Limiting the rights of subrogation of the insurer . . . provided by paragraph (b); or (3) Excluding coverage which inures to the direct or indirect benefit of the insurer . . . ." The parties accordingly contend that the "occupying" requirement in the General Insurance UIM policy is void under paragraph (c) because the requirement has the effect of both limiting Employers Insurance's subrogation rights and excluding coverage which would inure to the benefit of Employers Insurance.

The court disagrees. One never gets to the limitations in paragraph (3)(c) because the entirety of subsection (3) is inapplicable. According to subsection (3)'s introductory paragraph, its provisions apply only "[w]hen an injured employee incurs an injury . . . which was caused under circumstances entitling the employee . . . to receive proceeds under his or her employer's [UM or UIM policy]." As the court has already held, Cronk and Crumley were not injured under circumstances entitling them to coverage as "insureds" under their employer's UIM policy because they were not "occupying" a covered vehicle at the time of the accident. Thus, because Cronk and

Crumley were not entitled to coverage under their employer's UIM policy, no right to subrogation arises, and the protections afforded to that right are irrelevant.

IV.     **Conclusion**

For the foregoing reasons, the court concludes that Cronk and Crumley are not covered under their employer's UIM policy, as they do not qualify as "insureds" under the terms of the policy and the policy's definition of "insureds" based on occupancy of a covered vehicle is valid and enforceable, notwithstanding the Nevada public policy expressed in NRS § 690B.020(1). Plaintiff General Insurance is therefore entitled to summary judgment on its complaint for declaratory relief, on Defendant Cronk and Crumley's sole remaining counterclaim for breach of contract, and on Intervenor Employers Insurance's complaint-in-intervention for declaratory relief and subrogation.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment (#29) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Counter Motion for Summary Judgment (#54) is DENIED.

The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 9th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE